This is an appeal from a summary judgment entered by the Ross County Common Pleas Court dismissing appellant's R. C. 2943.21 petition for postconviction relief.
Appellant assigns the following errors:
FIRST ASSIGNMENT OF ERROR:
 "THE TRIAL COURT ERRED IN DISMISSING WITHOUT A HEARING THE PETITIONER'S FIRST CAUSE OF ACTION, THAT HE WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL BECAUSE OF HIS TRIAL COUNSEL'S FAILINGS AT TRIAL."
SECOND ASSIGNMENT OF ERROR:
 "THE TRIAL COURT ERRED WHEN IT OVERRULED THE SECOND CLAIM FOR RELIEF — THAT THE DEFENDANT'S RIGHTS WERE VIOLATED WHEN THE TRIAL COURT REFUSED TO ALLOW SUFFICIENT TIME TO PREPARE FOR TRIAL."
THIRD ASSIGNMENT OF ERROR:
 "THE TRIAL COURT ERRED WHEN IT GRANTED APPELLEE'S MOTION FOR SUMMARY JUDGMENT WHEN THERE WAS A GENUINE ISSUE AS TO A MATERIAL FACT IN VIOLATION OF THE FIFTH, SIXTH, EIGHTH, AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTIONS 2, 10, AND 16 OF THE OHIO CONSTITUTION."
The Ohio Supreme Court summarized the facts adduced during appellant's criminal trial in pertinent part as follows:
 "On September 19, 1985, Harold White, Sr., the eighty-four year old victim, left his second floor apartment where he lived alone to dine at Sir Richard's, a restaurant just north of Chillicothe. After dinner, he went home around 9:15 or 9:30 p.m. When he arrived home, White found burglars in his apartment. Appellant-defendant, Lawrence ('Larry') Landrum, was searching drawers in the kitchen. White, shining a flashlight on him, asked Landrum: 'What the hell are you doing in my apartment?' Landrum replied: 'I'm going to get all the money and stuff I can.' Then White told Landrum to leave immediately: 'If you don't get out I will call the police.'
 While White and Landrum were talking, Grant Swackhammer, Landrum's fourteen-year-old accomplice, came up behind White and struck White on the head five or six times with a large railroad bolt. He struck some blows after White had fallen. Grant then said: 'I killed him.' Landrum, joining in, sat astride White and wrestled with him. In the struggle, White tore Landrum's surgical gloves. Landrum then told Grant that White was still alive and to go get the biggest knife that he could find from the kitchen. Grant responded and handed Landrum a large kitchen knife.
 Landrum has given different versions of exactly what he did next. At trial, Landrum testified that he
 Karen Hughes Brown, age sixteen, also was at the Perry house and at the railroad yard. Karen said that Landrum told them he and his buddy, Grant, had '* * * broke into Mr. White's house and Grant was supposed to have hit [him] over the head and Larry sliced his throat.' Landrum said they had been planning the burglary for a couple of days. Karen went that evening with Larry back to an apartment on the first floor of the same building. Landrum had to get a sweater and pair of pants that he had left. There, Landrum told Karen, 'Oh, by the way, there's a dead body above you.' Karen testified that Landrum '* * * asked me what I would do if blood started dripping on me from the ceiling and after he did that he asked if I wanted to go upstairs and see the body.' That evening, Landrum threatened all the juveniles, '* * * if we told anybody, that he'd slice our throat. He said he sliced one person's throat, so he'd slice another.'
 On September 20, an anonymous caller phoned the police, and that afternoon, the police forcibly entered Mr. White's second floor apartment. Inside they found White, his throat slit, lying in a pool of blood. Closet doors were ajar or open, drawers were pulled open with some contents dumped on the floor, and a wooden locked cabinet had been pried open. Police also found two pieces of material later determined to be pieces of gloves.
 On September 21, police arrested Landrum for White's murder. On his person, police found a one-way bus ticket to Michigan purchased on September 20. When Landrum was arrested, the tennis shoes he was wearing bore traces of human blood. On September 23, after a grid search, police found a large kitchen knife in a wooded area. Police also found that day in the woods a paper sack containing a bloody towel and washcloth, surgical gloves, a pair of other rubber gloves, and the victim's wallet. At trial, Landrum admitted throwing away the towel and gloves. The knife, towel and washcloth, and one glove, contained human blood, type O, the same blood type as White's. Two fragments of gloves found in the apartment matched torn rubber gloves from the sack in the woods.
 A pathologist testified that White suffered multiple lacerations to his head caused by a relatively blunt instrument, possibly a railroad bolt. He found six distinct wounds on White's right forehead, right side of the scalp and back left side. One blow caused a depressed skull fracture which might have proved fatal. White died of massive bleeding from a gaping neck wound. The neck wound, five inches in length, extended to the spine itself; the right cartoid artery, windpipe, neck muscles and veins were all severed. At least two cutting episodes were involved. The evidence indicated that the kitchen knife found in the woods could have caused that wound.
 At trial, the evidence showed Landrum planned the burglary. Carolyn Brown lived in an apartment below White. Landrum, while visiting Brown on September 17, told her that he was in trouble, needed money and might rob White to get some money. Brown asked Landrum: 'What if you rob him and he comes in on you?' Landrum replied: 'I'll kill him.' Landrum also said that he would use surgical gloves so they could not take fingerprints. In his own testimony, Landrum claimed to have told Brown he would only knock White unconscious. On September 18, Landrum went upstairs to visit White's apartment to 'case the joint.' Landrum told White he was looking for an apartment to rent and White showed him through his apartment.
 Grant Swackhammer had found a railroad bolt, and Grant and Landrum kept the bolt to use later as a weapon. On September 19, Landrum, along with Grant, visited Landrum's girlfriend, Wendy, who had delivered their baby the day before. At the hospital, Landrum showed Wendy some surgical gloves and told her those gloves may make him some money.
 At trial, Landrum admitted essential details of planning and executing the burglary, including the confrontation with White. Although he admitted wrestling with White, he denied he cut White's throat, claiming only to have threatened him with the knife. Landrum did not recall telling various juveniles that he had cut White's throat.
 To support his testimony, Landrum relied heavily on two facts. First, the shorts he wore and the clothes he was carrying when arrested on September 21 showed no traces of blood. Some witnesses testified he wore those same clothes the night of the murder. Other testimony indicated that he changed clothes.
 Second, Landrum raised intoxication as interfering with his intent. Landrum testified that he took some pills and drank six to eight beers that afternoon and fourteen to eighteen beers between 4:30 and 7:30 p.m. on September 19 at Carolyn Brown's apartment. There, Grant and he waited for White to leave so they could break into White's apartment. Several witnesses testified that Landrum appeared high or intoxicated that afternoon and evening. Others testified that Landrum was high on drugs after the murder."
Id., 53 Ohio St.3d at 107-109, 559 N.E.2d 714-716.
On September 27, 1985, the Ross County Grand Jury returned an indictment charging appellant with one count of aggravated murder in violation of R.C. 2903.01(B) with two specifications, and one count of aggravated burglary in violation of R.C.2911.11. On February 21, 1986, the jury found appellant guilty as charged. On March 19, 1986, the jury recommended that a sentence of death be imposed upon appellant.
In its April 2, 1986, sentencing opinion, the trial court discussed and discounted the mitigating circumstances of appellant's age, protestations of innocence, lack of a significant criminal history. The trial court also discussed and discounted as follows other mitigation evidence that appellant presented, including his social history and substance abuse history:
 "The defense has offered a substantial amount of information, testimony, and evidence relating to the defendant's history, his character, and his background. This defense has shown that the defendant has no history of violent behavior, that he was born in the state of Michigan to a large family, that for the first five years of his life he lived in an extremely large household with his grandparents, aunts, uncles, and cousins and that his family life was very stable and loving.
 The defendant has shown that at the age of five years his mother married and moved to Chillicothe, Ohio, and eventually a brother and sister were born and were reared in the same household. The defendant has shown that he may have experienced some difficulty with this abrupt change in his life style and according to him, his discipline at home became somewhat inconsistent which he feels caused his subsequent appearances before the Ross County Juvenile Court system.
 The defendant further asserted that the Juvenile Court system was not sufficiently harsh or firm and that this ineffectiveness of the court system and his parents led to his subsequent behavioral problems with drinking and alcohol. The defendant further established that he served a brief tour of duty with the United States Navy and again asserts that the naval discipline system was ineffective and in some way contributed to his problems. The defendant has further shown that his family life consisted of a very stable and loving family, the members of whom expressed during his youth and adolescence a love and concern for him. The defendant has asserted what this Court considers to be mitigating factors concerning his background history and character 15 separate and identifiable matters. Although separately identifiable, it is clear that these 15 mitigating factors as set forth by defense counsel in its closing argument are all matters which are part of or concern the defendant's character and background, but which do not outweigh the mitigating [sic] circumstance which the defendant was found guilty of committing.
 In addition to those which have been discussed above, the defendant has attempted to show that his use of alcohol and drugs is a mitigating factor and one which outweighs the aggravating circumstances in this case. This Court specifically finds that the defendant's voluntary use of drugs and alcohol cannot be a factor which begins to outweigh the specification involved in this case. While it may be true that the defendant had consumed alcohol and taken drugs prior to this offense, it is clear that the defendant was totally aware of what he was doing, while he was doing it, and what he intended to accomplish. Self-reliance upon drugs or alcohol in this case can in no way justify the conduct of the defendant or excuse the defendant from the consequences of his actions. For these reasons, it is the opinion of this Court that these circumstances involving the defendant's use of alcohol and drugs do not outweigh the aggravating specifications in this case."
The trial court adopted the jury's death penalty recommendation and sentenced appellant to death on the aggravated murder conviction and to ten to twenty-five years on the aggravated burglary conviction.
On direct appeal to our court, appellant raised twenty-nine assignments of error. On January 12, 1989, we overruled appellant's assignments of error, conducted an independent death sentence review pursuant to R.C. 2929.05, found that the aggravating circumstances were not outweighed by the mitigating factors, found that the death penalty was appropriate in this case, and affirmed the trial court's judgment of conviction and sentence. See State v. Landrum (Jan. 12, 1989), Ross App. No. 1330, unreported.
On direct appeal to the Ohio Supreme Court, appellant raised thirty-one propositions of law. On August 15, 1990, the Ohio Supreme Court overruled appellant's propositions of law,[2]
conducted an independent death sentence review pursuant to R.C.2929.05, found that the aggravating circumstances outweigh any mitigating factors beyond a reasonable doubt, found that the death penalty is appropriate in this case, and thus affirmed our judgment affirming the trial court's judgment of conviction and sentence. See State v. Landrum (1990), 53 Ohio St.3d 107,559 N.E.2d 710. When overruling appellant's fourth proposition of law concerning his repeated requests for continuance, the Ohio Supreme Court wrote in pertinent part as follows:
 "Landrum argues in his fourth proposition of law that the trial court erred by denying repeated requests for continuance. Following a September 27, 1985 arraignment, the trial court in mid-October set a December 16 trial date. Landrum's counsel filed over forty-five pretrial motions. The trial court held frequent hearings to dispose of these. On November 19, Landrum's counsel requested a 'reasonable' delay.
 Reluctantly, the court approved a delay until February 10, 1986.
 In mid-January and later, counsel asked for other continuances, arguing that state public defender investigators assigned to the case, especially mitigation specialists, had been too busy on other cases to assist the two locally appointed counsel. Appointed counsel did not assert that they personally lacked time to interview witnesses or develop mitigation strategy. Nor did counsel ask for authority to hire investigators. The court kept the February 10 start date, but eventually delayed the sentencing hearing until March 17, 1986.
* * *
 In this case, the need for the delay did not suddenly arise from newly discovered evidence as in State v. Johnson (1986), 24 Ohio St.3d 87, 94, 494 N.E.2d 1061. Rather, the request for delay arose from appointed counsel's tactical desire to devote their efforts to extensive pretrial motions and to allow the state public defender's investigators to interview witnesses. Denial of a continuance requested pursuant to counsel's tactical design is permissible. State v. Ungar
[(1981), 67 Ohio St.2d 65, 423 N.E.2d 1078.] Although counsel claimed they were not prepared to proceed, they had over four full months to prepare for trial and over five months to prepare for sentencing. They investigated numerous approaches, and abandoned some, such as the presentation of psychiatric testimony. During the sentencing hearing, the defense called numerous witnesses, including four witnesses from Michigan. The record demonstrates from the inception a zealous, earnest, intelligent and dedicated defense effort. State v. Price [(1973), 34 Ohio St.2d 43, 295 N.E.2d 669.] Under these circumstances, the trial judge did not abuse his discretion by denying a continuance."
(Emphasis added.)
Id., 53 Ohio St.3d at 115-116, 559 N.E.2d at 721-722. On February 25, 1991, the United States Supreme Court denied appellant's petition for writ of certiorari. See Landrum v.Ohio (1991), 498 U.S. 1127.
On May 28, 1996, appellant filed the instant R.C. 2953.21
petition for postconviction relief setting forth forty-five claims for relief.[3] In his first claim for relief, appellant alleged ineffective assistance of counsel and set forth twenty-seven alleged failures of his trial counsel. We note that appellant did not raise an ineffective assistance of counsel claim during his direct appeals. In his second claim for relief, appellant alleged that the trial court violated his constitutional rights by failing to allow him sufficient time to prepare for the guilt phase of the trial and by failing to allow sufficient time to investigate, prepare, and present mitigation evidence for the sentencing phase of the trial. We note that appellant did raise this continuance issue during his direct appeals. In the remaining forty-three claims for relief, appellant raised a myriad of matters which he does not separately state and argue in this appeal. In the end of his petition for postconviction relief, appellant requested an evidentiary hearing.
Appellant attached numerous affidavits and other documents to his petition. Appellant argued that because he added the affidavits and other documents to the record, "the court now has available a complete social history and an appropriate evaluation by a clinical psychologist." Appellant claims that this new evidence prevents the application of the doctrine ofres judicata and thus permits reconsideration of the continuance issue and permits consideration for the first time of the ineffective assistance of counsel issue. The affidavits and documents appellant added to the record include the following:[4]
 A. An affidavit by Jill Miller, MSSW, a forensic social worker. In her affidavit, Miller opined that the mitigation investigation conducted prior to the mitigation phase of appellant's trial was inadequate and deficient. In particular, Miller noted that the investigation did not include sufficient information about appellant's drug and alcohol abuse and did not include information about appellant's ability to reform while in prison. After Miller evaluated the mitigation investigation, she conducted her own social history investigation of appellant. Miller's report of that investigation is attached to her affidavit.
 B. An affidavit by Robert L. Smith, Ph.D., a clinical psychologist. In his affidavit, Smith stated that at the time of the murder appellant was under the influence of drugs and alcohol, suffering from a type of depression known as Dysthymic Disorder, and suffering from a state of diminished capacity.
 C. An affidavit by Richard S. Ketchum, an attorney. In his affidavit, Ketchum stated that appellant was denied his Sixth Amendment right to counsel.
 D. An affidavit by Thomas Phillips, one of appellant's two trial counsel. In his affidavit, Phillips stated that the trial court "pushed us to trial before we could be prepared." Phillips also stated that "I was afraid to put on under developed evidence regarding Lawrence Landrum's obvious excessive drug and alcohol abuse for fear that the introduction of such limited evidence would back fire and could be used by the jury as an aggravator."
 E. An affidavit by William Allyn, appellant's other trial counsel. In his affidavit, Allyn stated that he is now employed as an Assistant Ross County Prosecuting Attorney.
 F. An affidavit by appellant. In his affidavit, appellant stated that he abused drugs and alcohol and suffered from withdrawal symptoms after his arrest. Appellant also stated that he was never told that he "had a right at the mitigation trial to make a statement to the jury without being cross examined by the prosecutor." Appellant further stated that "I wanted my attorneys to explain and provide more information to the jury about my drug and alcohol abuse and problems."
 G. An affidavit by Ken Murray, the attorney who prepared and filed appellant's petition for postconviction relief. In his affidavit, Murray stated that he had difficulty obtaining the information and expert services he needed to prepare the petition.
 H. An affidavit by Jane Core, one of two investigators who conducted appellant's mitigation investigation. In her affidavit, Core stated that the investigation was incomplete due to time constraints.
 I. An affidavit by Michel Coconis, MSW, the other investigator who conducted appellant's mitigation investigation. In the affidavit, Coconis stated that the investigation was incomplete and ineffective and contained only a "bare bones" social history.
 J. An affidavit of James F. Crates, a mitigation specialist. In his affidavit, Crates stated that when he assisted Jill Miller with her recent social history investigation, he was unable to locate many people who might have had information valuable to the original mitigation investigators. Crates further stated that most if not all of the people he was unable to contact would have been available at the time of the mitigation phase of appellant's trial.
 K. An affidavit by Stacey Michael, a mitigation specialist. In her affidavit, Michael stated that a letter that appellant's trial counsel received purportedly from one Skip Hathaway should have been forwarded to the mitigation investigators prior to the mitigation phase of the trial because the letter contained leads to people with knowledge about appellant's childhood experiences.
 L. An affidavit by Rameal Brian Coffenberger, a Chillicothe Correctional Facility inmate. In his affidavit, Coffenberger stated that he heard Grant Swackhammer say that he (and not appellant) cut the victim's throat.
 M. An affidavit by David Stebbins, Chief Legal Counsel for the Death Penalty Litigation Section of the Ohio Public Defender's Office. In his affidavit, Stebbins stated that appellant's attorney Ken Murray did speak to him about the need to obtain transcripts and case files in order to prepare appellant's petition for postconviction relief.
 N. An affidavit by S. Adele Shank, one of the attorneys who represented appellant during his direct appeals. In her affidavit, Shank stated that she informed the Ohio Supreme Court that it did not allow her sufficient time to prepare his direct appeal to that court.
 O. An affidavit by Randall Porter, an attorney with the Ohio Public Defender's Office. In his affidavit, Porter stated that he transported boxes of appellant's case files to Murray in 1992.
 P. An affidavit by Kathleen Justice, a member of the jury which convicted appellant. In her affidavit, Justice stated that: (1) she was not convinced of appellant's guilt beyond a reasonable doubt; (2) she signed the verdict form because she "felt a great deal of pressure by several members of the jury"; and (3) "[I]f I would have believe that a jury verdict of death actually meant that Mr. Landrum would get the death penalty, I would still be at the courthouse fighting for life imprisonment."[5]
 Q. An affidavit by Norma Jean Corcoran, a member of the jury which convicted appellant. In her affidavit, Corcoran stated that: (1) she knew the victim; (2) she was not convinced beyond a reasonable doubt that Mr. Landrum killed Mr. White"; (3) "I had no idea what Mitigation was and the instructions which the Judge read did not make it any more clear to me"; and (4) "had I known that Mr. Landrum would actually have received a death sentence I would not have signed my name to the verdict form recommending death."[6] R. Documents entitled "Execution Equipment," "Postmortem Examination of the Body of Jesse Joseph Tafero," "Postmortem Examination of the Body of Ronald John Michael Straight," "Postmortem Examination of the Body of Willie Jasper Darden, Jr.," "Postmortem Examination of the Body of Jeffrey Joseph Daugherty," "Postmortem Examination of the Body of Theodore Robert Bundy," and "Postmortem Examination of the Body of Aubrey Adams." The latter six documents included sketches and color photographs.
 S. One hundred thirty-six newspaper articles about appellant and his murder trial and direct appeals.
 T. A transcript of an interview of Grant Swackhammer by the Chillicothe Police Department Detective Division three days after the murder.
 U. Excerpts from a petition for postconviction relief filed in State v. Waddy, Franklin C.P. No. 86CR-10-3182.
 V. An article by Peter Meijes Tiersma entitled "Dictionaries and Death: Do Capital Jurors Understand Mitigation?"
On August 1, 1996, appellee filed a "motion for judgment pursuant to R.C. 2953.21(C)." In the motion, appellee alleged that no evidentiary hearing is required in this case. In a memorandum in support of the motion, appellee addressed each of appellant's forty-five claims for relief, arguing,inter alia, that: (1) many of the claims were or could have been raised on appeal; (2) many of the claims were cumulative in nature; and (3) claims of ineffective assistance of appellate counsel may not be heard in postconviction relief actions.
On December 30, 1997, the trial court entered findings of fact and conclusions of law addressing and rejecting each of appellant's forty-five claims for relief. Concerning the first claim for relief, which alleged ineffective assistance of trial counsel, the trial court wrote: "these matters could have been raised at trial or on appeal and are barred by res judicata * * * as new co-counsel were appointed to represent [appellant] on appeal." In support of this holding, the trial court citedState v. Lentz (1994), 70 Ohio St.3d 527, 639 N.E.2d 784; Statev. Cole (1982), 2 Ohio St.3d 112, 443 N.E.2d 169; State v.Perry (1967), 10 Ohio St.2d 175, 226 N.E.2d 104; and State v.Zuern (Dec. 4, 1991), Hamilton App. Nos. C-900481 and C-910229, unreported. Concerning the second claim for relief, which alleged that the trial court failed to allow appellant sufficient time to prepare for the guilt and sentencing phases of trial, the trial court cited Perry and held that this claim was res judicata because appellant raised it on direct appeal. Additionally, the trial court held that the affidavits attached to appellant's petition for postconviction relief are cumulative to the evidence that appellant presented during the mitigation phase of the trial. In this regard, the trial court cited State v. Combs (1994), 100 Ohio App.3d 90,652 N.E.2d 205. The trial court dismissed appellant's petition for postconviction relief without a hearing.
Appellant filed a timely notice of appeal.
 I
In his first assignment of error, appellant asserts that the trial court erred by dismissing his first claim for relief, which alleged that he received ineffective assistance of trial counsel.
The purpose of postconviction relief is to provide a remedy for a collateral attack upon judgments of conviction claimed to be void or voidable under the United States or the Ohio Constitution. Freeman v. Maxwell, Warden (1965), 4 Ohio St.2d 4, 210 N.E.2d 885. R.C. 2953.21 provides that any person convicted of a criminal offense and claiming a denial or infringement of constitutional rights may file a petition requesting the sentencing court to vacate or set aside the judgment. See State v. Gover (1995), 71 Ohio St.3d 577,645 N.E.2d 1246; State v. Powell (1993), 90 Ohio App.3d 260,629 N.E.2d 13, jurisdictional motion overruled in (1994),68 Ohio St.3d 1436, 625 N.E.2d 624. A postconviction proceeding is not an appeal of a criminal conviction, but rather, a collateral civil attack on the judgment. See State v. Steffen (1994),70 Ohio St.3d 399, 639 N.E.2d 67, citing State v. Crowder (1991),60 Ohio St.3d 151, 573 N.E.2d 652. In Steffen,70 Ohio St.3d at 410, 639 N.E.2d at 76, the court commented that "[p]ost-conviction review is a narrow remedy, since resjudicata bars any claim that was or could have been raised at trial or on direct appeal." To prevail on a postconviction relief petition, a petitioner must show that a denial or infringement of his constitutional rights has occurred. Statev. Powell (1993), 90 Ohio App.3d 260, 629 N.E.2d 13, jurisdictional motion overruled in (1994), 68 Ohio St.3d 1436,625 N.E.2d 624.
In Ohio, a properly licensed attorney is presumed competent and the appellant bears the burden to establish counsel's ineffectiveness. State v. Hamblin (1988), 37 Ohio St.3d 153,524 N.E.2d 476, cert. den. (1988), 488 U.S. 975; Vaughn v.Maxwell (1965), 2 Ohio St.2d 299, 209 N.E.2d 164. Appellant must show that counsel failed to function as the "counsel" contemplated by the Sixth Amendment. Strickland v. Washington
(1984), 466 U.S. 668. The Sixth Amendment right to counsel protects "the fundamental right to a fair trial." Id.,466 U.S. at 684. "A fair trial is one in which evidence subject to adversarial testing is presented to an impartial tribunal for resolution of issues defined in advance of the proceeding."Id., 466 U.S. at 685. Thus, effective counsel is one who "plays the role necessary to ensure that the trial is fair," id.,466 U.S. at 685, and, therefore, "[t]he benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." Id., 466 U.S. at 686.
To establish that defense counsel's conduct so undermined the functioning of the adversarial process, a defendant must establish: (1) that "counsel's performance was deficient"; and (2) that the "deficient performance prejudiced the defense."Id., 466 U.S. at 687. Counsel's performance is deficient if he "made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment."Id., 466 U.S. at 687. Whether counsel's performance is deficient is determined from an objective standard of reasonable representation. State v. Bradley (1989), 42 Ohio St.3d 136, 538 N.E.2d 373, cert den. (1990), 497 U.S. 1011. To prove that defense counsel's deficient performance prejudiced the defense, a defendant must establish that a reasonable probability exists that the result of the trial would have been different.
When filing a petition for postconviction relief, the petitioner may request an evidentiary hearing. R.C. 2953.21(A). However, a hearing is not automatically required for every postconviction relief petition that is filed. State v. Jackson
(1980), 64 Ohio St.2d 107, 110, 413 N.E.2d 819, 822. R.C.2953.21(A) and case law require the petitioner to file supporting affidavits and other documentary evidence to support his claim for relief. The court must then conduct an initial review of the record to determine whether to hold an evidentiary hearing. R.C. 2953.21(C) provides in pertinent part as follows:
 Before granting a hearing on a petition filed under division (A) of this section, the court shall determine whether there are substantive grounds for relief. In making such a determination, the court shall consider, in addition to the petition and supporting affidavits, and the documentary evidence, all the files and records pertaining to the proceedings against the petitioner, including, but not limited to, the indictment, the court's journal entries, the journalized records of the clerk of the court, and the court reporter's transcript.
(Emphasis added.)
The trial court need not hold a hearing on the issues if the petition, files and records of the case demonstrate that the petitioner is not entitled to relief. R.C. 2953.21(E). Thus, we must determine, as a matter of law, whether the petition, the supporting affidavits, the documentary evidence, and the files and records of the case establish substantive grounds for relief and the resultant need for a hearing on the merits.
We emphasize that a petitioner seeking postconviction relief is not automatically entitled to an evidentiary hearing. A trial court has a statutory duty to ensure that a petitioner adduces sufficient evidence to warrant a hearing. SeeState v. Kapper (1983), 5 Ohio St.3d 36, 448 N.E.2d 823; Statev. Jackson (1980), 64 Ohio St.2d 107, 413 N.E.2d 819; R.C.2953.21(C). If a petitioner's claim constitutes substantive grounds for relief, a trial court must grant a hearing if the record does not negate the petitioner's contentions. State v.Gibson (1992), 78 Ohio App.3d 501, 605 N.E.2d 441. If a petitioner fails to meet his burden, however, a trial court should dismiss the petition without conducting an evidentiary hearing. Kapper; Gibson. Additionally, self-serving and conclusory statements, without evidence to support the allegations, are insufficient and do not require the court to conduct an evidentiary hearing. In State v. Cole (1982), 2 Ohio St.3d 112, 443 N.E.2d 169, the court noted that when the allegations outside the record upon which appellant relies appear so contrived when measured against the overwhelming evidence in the record of trial counsel's competence, a trial court need not conduct a hearing to consider a petitioner's allegations.
When considering whether a petition, the supporting affidavits, the documentary evidence, and the files and records of the case establish substantive grounds for relief and the resultant need for a hearing on the merits, the trial court must keep in mind that the doctrine of res judicata bars the assertion of any particular relief claim that was or could have been raised on direct appeal. See State v. Apanovitch (1995),107 Ohio App.3d 82, 667 N.E.2d 1041; State v. Stoffer (1994),70 Ohio St.3d 399, 639 N.E.2d 67; State v. Perry (1967),10 Ohio St.2d 175, 226 N.E.2d 104. Thus, res judicata is a proper ground upon which to dismiss a postconviction relief petition without conducting an evidentiary hearing. Perry.
If a defendant, represented by new counsel on direct appeal, fails to raise the ineffective assistance of trial counsel issue, and if that issue could have been determined without resorting to evidence outside the record, res judicata is a proper basis on which to dismiss a postconviction relief petition. State v. Cole (1982), 2 Ohio St.3d 112,443 N.E.2d 169. In Cole, syllabus, the court held as follows:
 "Where defendant, represented by new counsel upon direct appeal, fails to raise therein the issue of competent trial counsel and said issue could fairly have been determined without resort to evidence dehors the record, res judicata is a proper basis for dismissing defendant's petition for post-conviction relief. (State v. Hester, 45 Ohio St.2d 71, modified.)"
In State v. Lentz (1994), 70 Ohio St.3d 527, 530,639 N.E.2d 784, 786,[7] the court noted that "Cole
recognizes a conflict of interest that is highly personal, and thus it may be logically argued that the exception to res judicata
applies only when trial and appellate counsel are the same person." InState v. Zuern 4, 1991), Hamilton App. Nos. C-900481 910229, unreported, the court held that the Cole reference to "new counsel" includes "new co-counsel," and thus the doctrine ofres judicata bars the assertion of ineffective assistance of counsel claims even when new co-counsel assisted trial counsel on appeal. In Zuern, the court reasoned:
 "Unless we presume, as Zuern would have us, the new co-counsel entering upon a criminal case at the appellate level would deliberately not exercise his professional judgment or duty to assert the ineffectiveness of his co-counsel at trial if the record demonstrated a basis for such a claim, a presumption we adamantly reject, we perceive no reason why the reference in Cole to 'new counsel' would not embrace new co-counsel as well as new independent counsel. * * *"
Accord State v. Broom (May 7, 1998), Cuyahoga App. No. 72581, unreported; State v. Jamison (Nov. 10, 1992), Hamilton App. No. C-910736, unreported.[8]
Appellant raises several arguments in support of his assignment of error. In light of Cole, Zuern, Broom, andJamison, we find no merit to appellant's argument that because one of his trial counsel represented him during his direct appeals, the doctrine of res judicata does not apply to the ineffective assistance of counsel claims that he raises in this postconviction relief action. Because new co-counsel represented appellant during his direct appeals, the doctrine of res judicata bars appellant from raising any ineffective assistance of counsel claims except those that rely on evidence outside the record. Cole; Zuern; Broom; and Jamison.
Next, appellant argues that because he submitted new material concerning the performance of his trial counsel, the ineffective assistance of counsel issue is not res judicata. We agree that appellant submitted new material concerning the performance of his trial counsel, but we find the new material insufficient to constitute substantive grounds for relief. As the trial court noted, the new material concerning appellant's social history and substance abuse history is cumulative to evidence that appellant presented during the mitigation phase of his trial.[9] Appellant's trial counsel presented a substantial amount of mitigation evidence. The evidence concerned both appellant's social history and his substance abuse history. Although appellant's trial counsel did not present psychological evidence during the mitigation phase of the trial, at the commencement of the mitigation phase he discussed the possibility of calling psychologist Dr. Nancy Schmidtgoessling as a witness. As the trial court noted in its April 2, 1986 sentencing opinion, "[t]he defense has offered a substantial amount of information, testimony, and evidence relating to the defendant's history, his character, and his background."
In State v. Combs (1994), 100 Ohio App.3d 90, 652 N.E.2d 205, discretionary appeal not allowed in (1995), 71 Ohio St.3d 1472,645 N.E.2d 735, the court similarly held that cumulative mitigation evidence does not establish ineffective assistance of counsel, despite the fact that during the mitigation phase of trial, counsel did not specifically discuss the defendant's ADHD diagnosis. In Combs, the court wrote in pertinent part as follows:
 "Of these elements, all except for the diagnosis of ADHD were specifically discussed by Fisher at the mitigation phase. Despite this diagnosis, when, as here, counsel has presented a meaningful concept of mitigation, the existence of alternative or additional mitigation theories does not establish ineffective assistance. * * *
 Combs also supports his argument concerning a drug and alcohol abuse expert with references to an affidavit in which Smith offered her conclusions about petitioner's drug and alcohol problems and an affidavit by a mitigation expert. These exhibits present information and theories that are cumulative of the evidence that trial counsel presented at mitigation. Therefore, under Strickland and Lockhart, they do not support substantive grounds for relief. This claim fails."
Id., 100 Ohio App.3d at 105, 652 N.E.2d at 214. Combs further held that if "evidence is cumulative of, or alternative to, material presented at trial, the court may properly deny a hearing" on a petition for postconviction relief. Id., 100 Ohio App. 3
d at 98, 652 N.E.2d at 210. See, also, State v. Powell
(1993), 90 Ohio App.3d 260, 270, 629 N.E.2d 13, 19, jurisdictional motion overruled in (1994), 68 Ohio St.3d 1436,625 N.E.2d 624; State v. Beuke (Aug. 14, 1991), Hamilton App. No. C-900718, unreported.
Appellant relies upon four federal cases in which the courts granted relief to petitioners on the grounds that their trial counsel failed to properly prepare for the mitigation phase of trial. We can easily distinguish those cases from the casesub judice. In Glenn v. Tate (C.A.6 1995), 71 F.3d 1204, the petitioner's trial counsel presented a "paucity of mitigation evidence."[10] In Austin v. Bell (C.A.6 1997), 126 F.3d 843, the petitioner's trial counsel failed to investigate or present any mitigation evidence. In Groseclose v. Bell (C.A.6 1997),130 F.3d 1161, the petitioner's trial counsel failed "to conduct any meaningful adversarial challenge" and failed "to put on any meaningful mitigation evidence." In Rickman v. Bell (C.A.6 1997), 131 F.3d 1150, the petitioner's trial counsel not only failed to defend his client, but also conveyed "to the jurors an unmistakable personal antagonism toward Rickman, characterized both by attacks on Rickman and by repeatedly eliciting information detrimental to Rickman's interests." TheRickman court concluded that "[i]n our view, Rickman would have been better off to have merely been denied counsel; as it was, he had to endure attacks from his own attorney that equaled or exceeded those of the prosecution."
Appellant also relies upon State v. Scott (1989), 63 Ohio App.3d 204, 578 N.E.2d 841, motion to certify overruled in (1989), 47 Ohio St.3d 705, 547 N.E.2d 986, for his proposition that "a petition alleging that mitigating evidence exists but that counsel failed to properly investigate those facts required a hearing." We can easily distinguish Scott from the case sub judice. In Scott, the petitioner's trial counsel presented no mitigation evidence except an unsworn statement of the petitioner stating his innocence.[11]
In the case sub judice, by contrast, "the record demonstrates from the inception a zealous, earnest, intelligent and dedicated defense effort." Landrum, 53 Ohio St.3d at 116,559 N.E.2d at 722. Appellant's trial counsel "investigated numerous approaches, and abandoned some, such as the presentation of psychiatric testimony." During the sentencing hearing, appellant's trial counsel called numerous witnesses, including four from Michigan. Although appellant's trial attorney might have presented even more mitigation witnesses, we find that appellant received effective assistance of counsel at the time of his trial.
We emphasize that defendants are not entitled to perfect mitigation hearings. Again, we note that in State v. Combs
(1994), 100 Ohio App.3d 90, 105, 652 N.E.2d 205, 214, the court wrote as follows that the existence of alternative or additional mitigation theories and evidence does not prove ineffective assistance of counsel: "[W]hen, as here, counsel has presented a meaningful concept of mitigation, the existence of alternative or additional mitigation theories does not establish ineffective assistance."
Additionally, we note that a defendant seeking to prove ineffective assistance of trial counsel must overcome the strong presumption that tpial counsel's actions constituted sound trial strategy. See State v. Smith (1985), 17 Ohio St.3d 98,100, 477 N.E.2d 1128, 1131, in which the court cited inStrickland v. Washington (1984), 466 U.S. 668, for the proposition that trial counsel is "strongly presumed" to have rendered adequate assistance, and "the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.' " Id. at 694-695. See, also, State v. Scott (July 15, 1993), Cuyahoga App. No. 62600, unreported, in which the court recognized that a decision not to present mitigation evidence may constitute sound trial strategy.
We find several indications in the case sub judice that appellant's trial counsel's actions during the mitigation phase of the trial constituted sound trial strategy. In its opinion overruling appellant's petition for postconviction relief, the trial court commented that the Ohio Supreme Court noted in appellant's direct appeal:
 "that defense counsel investigated numerous approaches such as the presentation of psychiatric testimony.
 State v. Landrum, 54 Ohio St.3d 107, 116. Counsel are not deemed to be ineffective if a logical, strategic reason exists for pursuing a certain course of action at trial. * * *"
In an affidavit attached to appellant's petition for postconviction relief, one of appellant's two trial counsel admitted as follows that he employed trial strategy during the mitigation phase of the trial: "I was afraid to put on under developed evidence regarding Lawrence Landrum's obvious excessive drug and alcohol abuse for fear that the introduction of such limited evidence would back fire and could be used by the jury as an aggravator."
In support of his argument that he received ineffective assistance of trial counsel, appellant relies upon many affidavits, including the affidavit of his trial counsel who stated that the trial court "pushed us to trial before we could be prepared," affidavits of the mitigation specialists who assisted the trial counsel, affidavits of mitigation specialists who reviewed the record, and an affidavit of a defense attorney who reviewed the record. In State v. Zuern
(Dec. 4, 1991), Hamilton App. Nos. C-900481, C-910229, unreported, the court discounted the use of similar affidavits in postconviction relief proceedings:
 "We are convinced, moveover, that the affidavits of the two reviewing defense attorneys do not constitute evidence dehors the record sufficient to preclude the application of res judicata on those claims. Such affidavits as these are not evidence of facts; the record speaks for itself on what Zuern's trial attorneys did or did not do in his defense. Rather, these affidavits merely state legal arguments which could and should have been raised on direct appeal. Indeed, it would be a relatively simply matter to defeat the application of res judicata in postconviction proceedings if all that was required was to have new, highly-qualified counsel make arguments that could and should have been raised on direct appeal, notarize those arguments in affidavit form, and characterize such material as 'evidence dehors the record.' Through such a process it would be possible to prolong forever postconviction review of the same claim on such so-called 'new' evidence or evidence dehors the record."
See, also, State v. Poindexter (Mar. 6, 1991), Hamilton App. No. C-890734, unreported. We note that appellant himself characterized the affidavit of the defense attorney who reviewed the record as being laden with legal argument. In his brief in this appeal, appellant wrote that the affidavit "provide(s) information about the standard of care required of an attorney representing a person charged with a capital offense" and "details the failures of trial counsel to meet these standards." For the reasons stated in Zuern, and for the reasons we stated above concerning the cumulative nature of the social history and substance abuse history evidence that appellant presented with his petition for postconviction relief, we do not believe that the affidavits by the attorneys and mitigation specialists in the case sub judice constitute substantive grounds for relief.
To the extent, if any, that appellant's petition for postconviction relief claims that he received ineffective assistance of appellate counsel, we find that the trial court properly denied the petition. In State v. Murnahan (1992),63 Ohio St.3d 60, 584 N.E.2d 1204, paragraph one of the syllabus, the court held as follows:
 "Claims of ineffective assistance of appellate counsel are not cognizable in post-conviction proceedings pursuant to R.C. 2953.21."
In Murnahan, the court noted that "appellate judges are in the best position to recognize, based upon the record and conduct of appellate counsel, whether such conduct was adequate in his or her representation before that body." Id.,63 Ohio St.3d at 65, 584 N.E.2d at 1208.
In conclusion, we find that the trial court properly dismissed appellant's first claim for relief in which he alleged that he received ineffective assistance of trial counsel. We agree with the trial court that the evidence appellant submitted with his petition was cumulative to the evidence presented at trial. Thus, we find that appellant failed to present new evidence sufficient to demonstrate that his trial counsel's performance fell below an objective standard of reasonable representation, or that a reasonable probability exists that but for counsel's alleged errors, appellant would have not been found guilty and sentenced to death. Appellant has not established a violation of either the United States Constitution or the Ohio Constitution such that appellant's conviction could be rendered either void or voidable.
Accordingly, based upon the foregoing reasons, we overrule appellant's first assignment of error.
 II
In his second assignment of error, appellant asserts that the trial court erred by dismissing his second claim for relief, in which he alleged that the trial court violated his constitutional rights by failing to allow sufficient time to prepare for the guilt phase of the trial and by failing to allow sufficient time to investigate and prepare evidence for the mitigation phase of the trial.
Initially, we note that the granting or denying of a motion for continuance rests within the sound discretion of the trial court. State v. Burke (1995), 73 Ohio St.3d 399, 407,653 N.E.2d 242, 249; State v. Grant (1993), 67 Ohio St.3d 465, 479,620 N.E.2d 50, 67; State v. Lorraine (1993), 66 Ohio St.3d 414,423, 613 N.E.2d 212, 220. In Grant, the court wrote that the "[f]actors to be considered can include the length of the continuance requested, any prior continuances, inconvenience, reasons for the delay, whether the defendant contributed to the delay, and other relevant factors." Absent an abuse of discretion, a reviewing court will not disturb the decision of the trial court.
In State v. Montgomery (1991), 61 Ohio St.3d 410, 413,575 N.E.2d 167, 171, the court followed established law on what constitutes an abuse of discretion:
 "The term 'abuse of discretion' '* * * connotes more than an error of law or of judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable. * * *' State v. Adams
(1980), 62 Ohio St.2d 151 * * *."
See, also, State v. Xie (1992), 62 Ohio St.3d 521,584 N.E.2d 715, and State v. Moreland (1990), 50 Ohio St.3d 58,552 N.E.2d 894.
We agree with appellee that appellant raised his continuance issue on direct appeal. See State v. Landrum (1990), 53 Ohio St.3d 107, 559 N.E.2d 710. When overruling appellant's fourth proposition of law concerning his repeated requests for continuance, the Ohio Supreme Court wrote in pertinent part as follows:
 "Landrum argues in his fourth proposition of law that the trial court erred by denying repeated requests for continuance. Following a September 27, 1985 arraignment, the trial court in mid-October set a December 16 trial date. Landrum's counsel filed over forty-five pretrial motions. The trial court held frequent hearings to dispose of these. On November 19, Landrum's counsel requested a 'reasonable' delay. Reluctantly, the court approved a delay until February 10, 1986.
 In mid-January and later, counsel asked for other continuances, arguing that state public defender investigators assigned to the case, especially mitigation specialists, had been too busy on other cases to assist the two locally appointed counsel. Appointed counsel did not assert that they personally lacked time to interview witnesses or develop mitigation strategy. Nor did counsel ask for authority to hire investigators. The court kept the February 10 start date, but eventually delayed the sentencing hearing until March 17, 1986.
* * *
 In this case, the need for the delay did not suddenly arise from newly discovered evidence as in State v. Johnson (1986), 24 Ohio St.3d 87, 94, 494 N.E.2d 1061. Rather, the request for delay arose from appointed counsel's tactical desire to devote their efforts to extensive pretrial motions and to allow the state public defender's investigators to interview witnesses. Denial of a continuance requested pursuant to counsel's tactical design is permissible. State v. Ungar
[(1981), 67 Ohio St.2d 65, 423 N.E.2d 1078.] Although counsel claimed they were not prepared to proceed, they had over four full months to prepare for trial and over five months to prepare for sentencing. They investigated numerous approaches, and abandoned some, such as the presentation of psychiatric testimony. During the sentencing hearing, the defense called numerous witnesses, including four witnesses from Michigan. The record demonstrates from the inception a zealous, earnest, intelligent and dedicated defense effort. State v. Price [(1973), 34 Ohio St.2d 43, 295 N.E.2d 669.] Under these circumstances, the trial judge did not abuse his discretion by denying a continuance."
(Emphasis added.)
Id., 53 Ohio St.3d at 115-116, 559 N.E.2d at 721-722. The Ohio Supreme Court concluded that the trial court did not abuse its discretion by overruling some of appellant's repeated requests for continuance.
Appellant argues that although he raised the continuance issue on direct appeal, because he has new evidence relating to the issue, he should be permitted to raise the issue in this postconviction relief action. Again, we note that the evidence appellant submitted with his petition is cumulative to the evidence that he submitted during trial. Thus, we find that appellant failed to present new evidence sufficient to demonstrate that the trial court denied his constitutional rights by denying his requests for continuance.
Accordingly, based upon the foregoing reasons, we overrule appellant's second assignment of error.
 III
In this third assignment of error, appellant asserts that the trial court erred by granting appellee's motion for summary judgment "where there was a genuine issue as to a material fact."
Initially, we note that contrary to appellant's assertion, appellee did not move for summary judgment. Rather, appellee moved for judgment pursuant to R.C. 2953.21(C) and (E) which provide in pertinent part as follows:
 (C) * * * Before granting a hearing on a petition filed under division (A) of this section, the court shall determine whether there are substantive grounds for relief. In making such a determination, the court shall consider, in addition to the petition and supporting affidavits, and the documentary evidence, all the files and records pertaining to the proceedings against the petitioner, including, but not limited to, the indictment, the court's journal entries, the journalized records of the clerk of the court, and the court reporter's transcript.
* * *
 (E) Unless the petition and the files and records of the case show the petitioner is not entitled to relief, the court shall proceed to a prompt hearing on the issues even if a direct appeal in the case is pending. * * *
As we discussed under appellant's first and second assignments of error, the petition and the files and records in the case sub judice demonstrate that appellant is not entitled to relief. For that reason, we find no error with the trial court's decision to deny appellant's request for an evidentiary hearing.
Accordingly, based upon the foregoing reasons, we overrule appellant's third assignment of error.
JUDGMENT AFFIRMED.
 JUDGMENT ENTRY
It is ordered that the judgment be affirmed and that appellee shall recover of appellant costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Ross County Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute that mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
Kline, J. Grey*, J.: Concur in Judgment Opinion
For the Court
 By: _____________________ Peter B. Abele, Judge
 NOTICE TO COUNSEL
Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.
[2] Although the Ohio Supreme Court found that the trial court erred during the sentencing hearing by excluding proffered testimony by Randy Coffenberger to the effect that Grant Swackhammer claimed he slit the victim's throat, the Ohio Supreme Court determined that this error was "cured" by the its independent reweighing of the aggravating and mitigating factors.
[3] Am.Sub.S.B. No. 4, effective September 21, 1995, states that post-conviction relief petitions must be filed within 180 days of the petitioner's sentencing entry.
Post-conviction relief petitions filed by persons sentenced prior to September 21, 1995, however, must be filed with the time requirements set forth in R.C. 2953.21(A)(2) or within one year of the effective date of the act, whichever is later. SeeState v. Wilburn (Sept. 29, 1997), Lawrence App. No. 97 CA 07, unreported, at footnote one; State v. Rayburn (Aug. 27, 1997), Gallia App. No. 97 CA 03, unreported, at footnote one; State v.Kanawalsky (June 30, 1997), Meigs App. No. 96 CA 26, unreported; State v. Vroman (Apr. 15, 1997), Ross App. No. 96 CA 2258, unreported.
Because appellant was sentenced prior to the effective date of the act, he had until September 21, 1996, one year after the effective date of the act, to file his petition. Appellant's May 28, 1996 petition meets this timeliness requirement.
[4] On April 8, 1997, appellant filed a motion for leave to file an amended petition for post-conviction relief and nineteen affidavits by his aunts, uncles, cousins, and other relatives. On December 30, 1997, the trial court overruled appellant's motion for leave.
[5] Evid.R. 606(B) prohibits consideration of this affidavit. The rule provides:
 (B) Inquiry into the validity of the verdict or indictment. Upon inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon his or any other juror's mind or emotions as influencing him to assent to or dissent from the verdict or indictment or concerning his mental processes in connection therewith. * * * His affidavit or evidence of any statement by him concerning a matter about which he would be precluded from testifying will not be received for these purposes.
[6] Evid.R. 606(B) prohibits consideration of this affidavit. See the previous footnote, supra.
[7] In Lentz, syllabus, the court held:
"When a criminal defendant is represented by two different attorneys from the same public defender's office at trial and on direct appeal, res judicata bars a claim of ineffective assistance of trial counsel raised for the first time in a petition for postconviction relief when such claim could have been made on direct appeal without resort to evidence beyond the record, unless the defendant proves that an actual conflict of interest enjoined appellate counsel from raising ineffective assistance of trial counsel on direct appeal."
[8] But, see, State v. Evans (June 19, 1998), Lucas App. No. L-97-1134, unreported, in which the court took the opposite position, commenting that "[i]t is unlikely that, as co-counsel with Whittenberg, Spencer would be inclined to assert a claim on appeal for ineffective assistance of trial counsel."
[9] Additionally, we note that substance abuse evidence, in general, has little mitigation value. In State v. Slagle
(1992), 65 Ohio St.3d 597, 614, 605 N.E.2d 916, 931, the court wrote as follows:
 "Further, mere alcoholism or other addictions, voluntary drunkenness and drug use are not mitigating factors. It is a fact that ' "more than one-half of all murderers are believed to have been intoxicated at the time of the act." ' Watterson, Just Say No to the Charges Against You; Alcohol Intoxication, Mental Capacity, and Criminal Responsibility (1991), 19 Bull.Am.Acad.Psychiatry Law 277, quoting Diagnostic and Statistical Manual of Mental Disorders (3 Ed.Rev. 1987), 128. Such voluntary conduct should not reduce the punishment imposed by law."
See, also, State v. Goff (1998), 82 Ohio St.3d 123, 143,694 N.E.2d 916, 931 ("we give little weight to appellant's voluntary substance abuse"); State v. White (1998), 82 Ohio St.3d 16,28, 693 N.E.2d 772, 783 ("appellant's alcohol and drug abuse problems are entitled to some mitigating weight");State v. Mitts (1998), 81 Ohio St.3d 223, 237, 690 N.E.2d 522,533 ("voluntary drunkenness is entitled to very little mitigating weight"); State v. Otte (1996), 74 Ohio St.3d 555,568, 660 N.E.2d 711, 723 (the fact that the appellant was engaged in poly-substance abuse and major alcohol use is "a weak mitigating factor"); State v. Green (1993), 66 Ohio St.3d 141,153, 609 N.E.2d 1253, 1263 (the appellant's lack of intelligence, family upbringing, and alcohol and drug addition collectively are "entitled to modest weight"). Accord State v.McNeill (1998), 83 Ohio St.3d 438, 700 N.E.2d 596, in which the court commented that the defendant considered his drug and alcohol abuse as a R.C. 2929.04(B)(7) mitigating factor, but when the court discussed its weighing of the aggravating and mitigating factors, the court did not mention the defendant's drug and alcohol abuse.
[10] The Glenn court found that trial counsel erred by failing to discover that the petitioner suffered from global organic brain damage and "compounded this error by a series of mistakes, which, among other things, led to the jury being presented with uncontradicted expert evidence that the offense was not the product of mental retardation or organic brain disease."
[11] Interestingly, the petitioner in Scott ultimately lost his bid for postconviction relief. After an evidentiary hearing on remand and an additional appeal, the appellate court held inState v. Scott (July 15, 1993), Cuyahoga App. No. 62600, unreported:
 "Appellant has failed to prove that his trial attorneys breached their duty to provide effective assistance of counsel. Based upon the testimony of the two attorneys at the hearing below, we find that the decision to present to the jury appellant's unsworn affidavit was an informed decision and a reasonable mitigation tactic. * * *"
The court noted that trial counsel believed that their best hope to avoid the death penalty was to rely on the mitigation theory of residual doubt. A psychiatric report might have negated the use of that theory "in that [the report] would have linked appellant's childhood experiences to his poor judgment as an adult in committing crimes." The choice of an unsworn statement shielded the petitioner from cross-examination.
* Lawrence Grey, retired, sitting by assignment of the Ohio Supreme Court in the Fourth District.