Richard H. AUSTIN, Petitioner–Appellee,

v.

Ricky BELL, Warden, Respondent–Appellant.

No. 96–5754.

United States Court of Appeals, Sixth Circuit.

Argued April 23, 1997.

Decided Oct. 2, 1997.

Larry D. Woods (argued), Woods & Woods, Michele D. Collins (briefed), Law Office of Michele D. Collins, Nashville, TN, for Petitioner–Appellee.

Gordon W. Smith, Asst. Attorney General (briefed), Glenn R. Pruden (briefed), Office of the Attorney General, Criminal Justice Division, John H. Baker, III, Office of the Attorney General, Michael E. Moore (argued and briefed), Office of the Attorney General, Nashville, TN, for Respondent–Appellant.

Before: MARTIN, Chief Judge; MERRITT and SUHRHEINRICH, Circuit Judges.

## OPINION

### SUHRHEINRICH, Circuit Judge.

Respondent Warden Ricky Bell ("Warden Bell") appeals from summary judgment for Petitioner Richard H. Austin ("Austin") on his application for a writ of habeas corpus. Austin was convicted of first degree murder and sentenced to death by a jury in a Tennessee state court for contracting the murder of an undercover police agent. Warden Bell raises three issues: (1) whether the reasonable doubt instruction unconstitutionally lowered the state's burden of proof; (2) whether Austin was denied effective assistance of counsel in both the liability and penalty phases of his trial; and (3) whether the sentencing instruction unconstitutionally required the jury to agree unanimously on mitigating circumstances.

This Court finds that the reasonable doubt jury instruction was constitutional. We also find that Petitioner received effective assistance of counsel during the guilt phase of his trial but not during the sentencing phase. Therefore, this Court will remand to the state court for resentencing. Consequently, we need not decide whether the instruction on mitigating circumstances was constitutional. However, we caution the state court to insure that the instruction on mitigating circumstances in resentencing permits each juror to consider all relevant mitigating evidence. Accordingly, this Court **AFFIRMS**
in part, **REVERSES** in part, and **REMANDS** for resentencing.

## I. BACKGROUND.

A jury found Austin guilty of hiring Jack Charles Blankenship, an escaped convict, to kill Julian C. Watkins, an undercover agent for the Memphis Police Department and sentenced Austin to death.[1] Austin's conviction and death sentence were affirmed on direct appeal in the state courts. *State v. Austin,* 618 S.W.2d 738 (Tenn.1981). The denials of his requests for post-conviction relief in state court were also affirmed. *Austin v. State,* No. 02C01–9102–CR–00009, 1991 WL 153016 (Tenn.Crim.App., Aug. 14, 1991), *Austin v. State,* No. 02C01–9310–CR–00238, 1995 WL 263930 (Tenn.Crim.App., May 03, 1995).

Austin petitioned for a federal writ of habeas corpus and then moved for summary judgment. The district court partially granted Austin's motion for summary judgment and issued the writ, holding that: (1) Austin's trial counsel provided ineffective assistance in both the liability and sentencing phases of the trial; (2) the reasonable doubt instruction at Austin's trial was unconstitutional; and (3) it was reasonably likely that the jury interpreted the instructions as preventing any juror from considering a mitigating circumstance unless the jury unanimously found that circumstance. *Austin v. Bell,* 938 F.Supp. 1308 (M.D.Tenn.1996).[2]

■ Warden Bell appeals from the summary judgment for Austin and challenges the district court's holdings on the ineffective assistance of counsel claim and the jury instructions on reasonable doubt and mitigat-

1. In early 1977, the police suspected illegal gambling at Austin's pool hall and employed Watkins, a reserve deputy sheriff, to investigate. Based on Watkins' testimony, the state obtained indictments and arrest warrants for Austin, his wife, and several employees and associates, including Terry Casteel, the manager of the pool hall. Watkins was to be the chief witness against them.

   After their arrests, Austin, Blankenship, and Casteel met. During their meeting, Austin and Blankenship spoke separately, Austin then asked Casteel to drive Blankenship to Watkins' house. Casteel and Blankenship did not find Watkins

there, but returned on the morning of May 23, 1977, when Blankenship killed Watkins. After the murder, Blankenship was seen with a large sum of money. The police arrested him on May 24, 1977. Blankenship pleaded guilty and was sentenced to life in prison.

   Austin and Casteel were indicted for murder. Their trials were severed after Casteel agreed to testify for the State that Austin hired him to kill Watkins.

2. In another opinion, *Austin v. Bell,* 927 F.Supp. 1058 (M.D.Tenn.1996), the district court also rejected several other issues that Austin raised in his habeas petition.

ing circumstances.[3] Austin has not cross appealed.

## II. REASONABLE DOUBT INSTRUCTION

■ The district court found that the reasonable doubt instruction was unconstitutional because it lowered the constitutional burden of proof of "beyond a reasonable doubt" by requiring merely "moral certainty" and by allowing the jury to base its verdict on something other than the prosecutor's proof. *Austin,* 938 F.Supp. at 1318–19. Warden Bell argues that the district court erred because the instruction does not lower the burden of proof to convict Austin. We find that Austin's claim is without merit.

■ To warrant habeas relief, jury instructions must not only have been erroneous, but also, taken as a whole, so infirm that they rendered the entire trial fundamentally unfair. *Estelle v. McGuire,* 502 U.S. 62, 72, 112 S.Ct. 475, 482, 116 L.Ed.2d 385 (1991); *Henderson v. Kibe,* 431 U.S. 145, 154, 97 S.Ct. 1730, 1736–37, 52 L.Ed.2d 203 (1977); *Wood v. Marshall,* 790 F.2d 548, 551–52 (6th Cir.1986). If an instruction is ambiguous and not necessarily erroneous, it violates the Constitution only if there is a reasonable likelihood that the jury has applied the instruction improperly. *Estelle,* 502 U.S. at

72, 73 n. 4, 112 S.Ct. at 482 n. 4; *Boyde,* 494 U.S. 370, 380, 110 S.Ct. 1190, 1197–98, 108 L.Ed.2d 316 (1990).

Austin alleges that the following jury instruction violated his constitutional rights:

Reasonable doubt is that doubt engendered by an investigation of all the proof in the case and an inability after such investigation to let the mind rest easily upon the certainty of guilt. Reasonable doubt does not mean a doubt that may arise from possibility. Absolute certainty of guilt is not demanded by the law to convict of any criminal charge, but moral certainty is required and this certainty is required as to every proposition of proof requisite to constitute the offense.

(J.A. at 320.) Austin argues that this "reasonable doubt" instruction is similar to the "reasonable doubt" instruction held to be unconstitutional in *Cage v. Louisiana,* 498 U.S. 39, 111 S.Ct. 328, 112 L.Ed.2d 339 (1990).[4] In *Cage,* the Supreme Court held that the instruction allowed a reasonable juror to find guilt based on a degree of proof below that required by the Constitution because it required a "moral certainty," rather than an "evidentiary certainty," that the defendant was guilty, and it suggested that jurors needed an "actual substantial doubt" or a "grave

---

3. Warden Bell also contends that the new deferential review standards of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C.A. §§ 2254(d) and (e) and 2264(b) (West 1996), apply to this habeas appeal. This appeal was pending when the AEDPA became effective on April 24, 1996. The Supreme Court recently held in *Lindh v. Murphy,* — U.S. —, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997), that the new review standards of 28 U.S.C. § 2254(d)(1)-(4), which apply to habeas claims generally, do not apply to pending cases. However, section 107(c) of the AEDPA, 28 U.S.C. §§ 2261–2266, explicitly applies these review standards to capital habeas cases pending when the AEDPA became effective, but only if the state provides for appointment and compensation of competent counsel and reasonable expenses for litigation of post-conviction relief. 28 U.S.C. § 2261(b) and (c). There is no indication that Tennessee has complied with 28 U.S.C. § 2261(b) and (c). *See Rahman v. Bell,* 927 F.Supp. 262, 266 (M.D.Tenn.1996); *Austin v. Bell,* 927 F.Supp. 1058, 1061–62 (M.D.Tenn.1996). Therefore, the new review standards of 28 U.S.C. § 2254(d)(1)-(4), do not apply to this case.

4. In *Cage,* the jury was provided with the following "reasonable doubt" instruction:

If you entertain a reasonable doubt as to any fact or element necessary to constitute the defendant's guilt, it is your duty to give him the benefit of that doubt and return a verdict of not guilty. Even where the evidence demonstrates a probability of guilt, if it does not establish such guilt beyond a reasonable doubt, you must acquit the accused. This doubt, however, must be a reasonable one; that is one that is founded upon a real tangible substantial basis and not upon mere caprice and conjecture. *It must be such doubt as would give rise to a grave uncertainty,* raised in your mind by reasons of the unsatisfactory character of the evidence or lack thereof. A reasonable doubt is not a mere possible doubt. *It is an actual substantial doubt.* It is a doubt that a reasonable man can seriously entertain. What is required is not an absolute or mathematical certainty, but a moral certainty.

*Cage,* 498 U.S. at 40, 111 S.Ct. at 329.

uncertainty," instead of a "reasonable doubt," to acquit. *Id.* at 40–41, 44, 111 S.Ct. at 329–30.

■ In *Victor v. Nebraska,* 511 U.S. 1, 114 S.Ct. 1239, 127 L.Ed.2d 583 (1994), however, the Supreme Court held that use of the term "moral certainty" does not, of itself, render a "reasonable doubt" instruction unconstitutional. The phrase "moral certainty" is constitutionally permissible where the rest of the instruction "lends content to the phrase," *Id.* at 14, 114 S.Ct. at 1247 and indicates the government's proper burden of proof. In *Victor,* the Court found the following language constitutional:

> "Reasonable doubt is defined as follows: It is not a *mere possible doubt;* because everything relating to human affairs, and *depending on moral evidence,* is open to some possible or imaginary doubt. It is that state of the case which, after the entire comparison and consideration of all the evidence, leaves the minds of the jurors in that condition that they cannot say they feel an abiding conviction, *to a moral certainty,* of the truth of the charge."

*Id.* at 8, 114 S.Ct. at 1244. The Court recognized that an instruction which requires only that jurors be "morally certain" of a defendant's guilt impermissibly suggests "a standard of proof lower than due process requires or ... conviction on factors other than the government's proof." *Id.* at 16, 114 S.Ct. at 1248. However, the Court found that the "abiding conviction" language, when used in conjunction with "moral certainty," properly stated the government's burden of proof. *Id.* at 15, 114 S.Ct. at 1247–48.

We find that the reasonable doubt instruction in this case is more like the acceptable language in *Victor* than the unacceptable language in *Cage.* The language of an "inability to let the mind rest easily" lends content to the phrase "moral certainty" similar to the "abiding conviction" language in *Victor,* increasing, if anything, the prosecutor's burden of proof. It also does not create a reasonable likelihood that the jury applied the in-struction in a way that would lower the state's burden of proof because it does not increase the measure of doubt beyond a "reasonable doubt."

### III.  INEFFECTIVE ASSISTANCE OF COUNSEL

■ The district court concluded that Austin received ineffective assistance of counsel during both the liability and sentencing phases of his trial because his attorney failed to conduct sufficient investigation, failed to file sufficient pretrial motions, failed to call critically important witnesses during the guilt phase of trial, and failed to present any evidence at sentencing. *Austin,* 938 F.Supp. at 1322–25. Warden Bell contends that the district court erred in finding ineffective assistance of counsel because even if defense counsel's performance was deficient, it did not prejudice Austin's defense, and was therefore not defective under *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). This Court holds that even if Austin's trial counsel's performance was deficient, Austin has failed to show any actual prejudice to his defense in the liability phase of his trial. However, this Court holds that Austin's trial counsel's performance during the sentencing phase was deficient and also prejudiced his defense because he presented no evidence.[5]

#### A.  Liability Phase

■ Ineffective assistance of counsel occurs when an attorney's deficient performance prejudices the defense and renders the trial unfair and the result unreliable. *Strickland,* 466 U.S. at 687, 104 S.Ct. at 2064; *McQueen v. Scroggy,* 99 F.3d 1302, 1310–11 (6th Cir.1996). Reviewing courts focus on whether counsel's errors have undermined the reliability of and confidence that the trial was fair and just. *Strickland,* 466 U.S. at 686, 104 S.Ct. at 2063–64; *United States v. Cronic,* 466 U.S. 648, 658, 104 S.Ct. 2039, 2046, 80 L.Ed.2d 657 (1984); *McQueen,* 99 F.3d at 1311–12. To show prejudice, "[t]he

---

5.  Warden Bell also contends that the district court ignored the legal presumption of correctness of the state court's finding of effective assistance of counsel. However, that is a mixed issue of law and fact which this Court reviews de novo. *Sims v. Livesay,* 970 F.2d 1575, 1579 (6th Cir. 1992).

defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694, 104 S.Ct. at 2068; *Nix v. Whiteside*, 475 U.S. 157, 175, 106 S.Ct. 988, 998, 89 L.Ed.2d 123 (1986); *McQueen*, 99 F.3d at 1311. The performance and prejudice components of the *Strickland* test are mixed questions of law and fact, which this Court reviews de novo. *Strickland*, 466 U.S. at 698, 104 S.Ct. at 2070; *McQueen*, 99 F.3d at 1310–11.

■ Review of defense counsel's performance is highly deferential, *Strickland*, 466 U.S. at 689, 104 S.Ct. at 2065 Courts presume that defense counsel has rendered adequate assistance by exercising reasonable professional judgment and sound trial strategy. *Id.* at 690, 104 S.Ct. at 2065–66; *accord McQueen*, 99 F.3d at 1311; *O'Hara v. Wigginton*, 24 F.3d 823, 828 (6th Cir.1994). However, a defense counsel's performance must be "reasonably likely to render ... reasonably effective assistance." *Beasley v. United States*, 491 F.2d 687 (6th Cir.1974). This requires a defense counsel to reasonably investigate the facts of the case or reasonably determine that an investigation is not necessary. Failure to do so is deficient performance. *Strickland*, 466 U.S. at 691, 104 S.Ct. at 2066–67; *O'Hara*, 24 F.3d at 828; *Workman v. Tate*, 957 F.2d 1339, 1345–46 (6th Cir.1992).

Here Austin complains that Livingston interviewed only Blankenship and himself. However, Austin did not identify any other leads that Livingston should have investigated that would have reasonably resulted in a different verdict. Livingston also filed few pretrial motions. Nevertheless, Austin did not identify any specific pretrial motions that Livingston should have filed that reasonably would have resulted in a different verdict.

Austin challenges Livingston's failure to call Blankenship or Austin's wife to testify at trial. Austin argues that Livingston should have called Blankenship because Blankenship gave Livingston a statement that Austin did not hire him to kill Watkins. However, Austin has not demonstrated that Livingston's tactical decision not to call Blankenship because of Blankenship's credibility and reliability problems was unreasonable, that Blankenship would have testified consistently at trial, or that Blankenship's uncertain testimony would have reasonably resulted in a different verdict.

Austin also maintains that Livingston should have called his wife to testify because: (1) she had as much reason as Austin to kill Watkins because Watkins would have testified against her also; and (2) she had a motive to implicate Austin in the murder because she was romantically involved with Casteel. However, Austin has not identified any evidence to this Court that his wife and Casteel hired Blankenship to kill Watkins or that they were romantically involved. Accordingly, Austin has failed to demonstrate that Livingston's conduct during the liability phase of the trial prejudiced his defense.

## B. Sentencing Phase

■ Livingston's representation during the sentencing phase is a different story. We find that Livingston's failure to investigate and present any mitigating evidence during the sentencing phase so undermined the adversarial process that Austin's death sentence was not reliable.

■ The Eighth Amendment requires a jury to consider the circumstances of the crime and the defendant's background and character during the sentencing phase of a capital trial. *Boyde v. California*, 494 U.S. at 377–78, 110 S.Ct. at 1196–97; *Lockett v. Ohio*, 438 U.S. 586, 604, 98 S.Ct. 2954, 2964–65, 57 L.Ed.2d 973 (1978). The Constitution also requires defense counsel to reasonably investigate a defendant's background and present it to the jury. Failure to investigate or present mitigating evidence at sentencing may constitute ineffective assistance of counsel. *Glenn v. Tate*, 71 F.3d 1204, 1206–08 (6th Cir.1995), *cert. denied*, —— U.S. ——, 117 S.Ct. 273, 136 L.Ed.2d 196 (1996) (counsel provided ineffective assistance where information was not presented to jury at sentencing because counsel made virtually no attempt to prepare for sentencing phase).

In this case, Livingston did not present any mitigating evidence because he did not think that it would do any good. However, given that several of Austin's relatives, friends, death penalty experts, and a minister were available and willing to testify on his behalf, this reasoning does not reflect a strategic decision, but rather an abdication of advocacy. This Court finds that Livingston's failure to investigate or present any mitigating evidence undermined the adversarial process and rendered the death sentence unreliable. Accordingly, this Court finds that Austin received ineffective assistance of counsel at sentencing and will remand for retrial of the sentencing phase.

## IV. UNANIMITY ON MITIGATING CIRCUMSTANCES

Because this Court has determined that this case should be remanded for resentencing, it need not decide whether the instruction on mitigating circumstances created a substantial possibility that the jury interpreted the instruction to prevent them from individually considering a mitigating circumstance unless they unanimously agreed on that circumstance. However, this Court has serious concerns that the instruction did just that. Therefore, we caution counsel that in resentencing Austin, each individual member of the capital jury must be able to consider all mitigating evidence that Austin presents. *McKoy v. North Carolina*, 494 U.S. 433, 440–41, 110 S.Ct. 1227, 1232–33, 108 L.Ed.2d 369 (1990); *Mills v. Maryland*, 486 U.S. 367, 108 S.Ct. 1860, 100 L.Ed.2d 384 (1988); *Lockett v. Ohio*, 438 U.S. at 605, 98 S.Ct. at 2965; *Kordenbrock v. Scroggy*, 919 F.2d 1091, 1108–10, 1120–21 (6th Cir.1990)(en banc).

## V. CONCLUSION

We **REVERSE** the district court as to the ineffective assistance of counsel during the liability phase of Austin's trial and the unconstitutionality of the reasonable doubt instruction. However, we **AFFIRM** the district court's finding of ineffective assistance of counsel at sentencing. Accordingly, we **RE-** **MAND** for retrial of the sentencing phase of Austin's trial.