# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### July 12, 2006 Session

## RICHARD HALE AUSTIN v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Shelby County**
**No. B58357-A     C. Creed McGinley, Judge**

---

**No. W2005-02591-CCA-R3-CO  - Filed December 13, 2006**

---

The petitioner, Richard Hale Austin, was sentenced to death by a Shelby County jury on March 5, 1999.  In October 2004, the petitioner's counsel filed a petition for writ of error *coram nobis* on the basis of newly discovered evidence in the form of recanted testimony.  Without holding an evidentiary hearing, the *coram nobis* court dismissed the petition, and the petitioner now brings this appeal challenging the action.  Upon review, we affirm the judgment of the lower court.

**Tenn. R. App. P. 3; Judgment of the Criminal Court is Affirmed.**

JAMES CURWOOD WITT, JR., J., delivered the opinion of the court, in which JERRY L. SMITH and JOHN EVERETT WILLIAMS, JJ., joined.

Robert L. Hutton, Memphis, Tennessee, for the Appellant, Richard Hale Austin.

Robert E. Cooper, Jr., Attorney General & Reporter; Mark E. Davidson, Assistant Attorney General; William L. Gibbons, District Attorney General; and John Campbell, Assistant District Attorney General, for the Appellee, State of Tennessee.

## OPINION

In 1977, a Shelby County jury convicted the petitioner of accessory before the fact to the first degree murder of Julian Watkins.  The following facts formed the basis for the petitioner's conviction:

> In early 1977, the [Memphis Police Department] suspected illegal gambling at [the petitioner's] pool hall and employed [Julian] Watkins, a reserve deputy sheriff, to investigate.  Based on Watkins' testimony, the [S]tate obtained indictments and arrest warrants for [the petitioner], his wife, and several employees and associates, including Terry Casteel, the manager of the pool hall.  Watkins was to be the chief witness against them.

After their arrests, [the petitioner], [Jack Charles] Blankenship, and Casteel met. During their meeting, [the petitioner] and Blankenship spoke separately, [and the petitioner] then asked Casteel to drive Blankenship to Watkins' house. Casteel and Blankenship did not find Watkins there, but returned on the morning of May 23, 1977, when Blankenship killed Watkins. After the murder, Blankenship was seen with a large sum of money. The police arrested him on May 24, 1977. Blankenship pleaded guilty and was sentenced to life in prison.

[The petitioner] and Casteel were indicted for murder. Their trials were severed after Casteel agreed to testify for the State that [the petitioner] hired him to kill Watkins.

*Austin v. Bell*, 126 F.3d 843, 845 n.1 (6th Cir. 1997).

The Tennessee Supreme Court affirmed the conviction and death sentence on direct appeal. *See State v. Austin*, 618 S.W.2d 738 (Tenn. 1981), *cert. denied*, 454 U.S. 1128, 102 S. Ct. 980 (1981). This court denied the petitioner's multiple requests for post conviction relief. *See Richard H. Austin v. State*, No. 02C01-9310-CR-00238 (Tenn. Crim. App., Jackson, May 3, 1995) (fourth petition for post conviction relief and first petition for writ of habeas corpus – consolidated), *perm. app. denied* (Tenn. 1995); *Richard Austin v. State*, No. 02C01-9102-CR-00009 (Tenn. Crim. App., Jackson, Aug. 14, 1991) (third petition for post conviction relief), *perm. app. denied* (Tenn. 1991); *Richard Hale Austin v. State*, No. 17 (Tenn. Crim. App., Jackson, Dec. 10, 1986) (second petition for post conviction relief), *perm. app. denied* (Tenn. 1987); *Richard Hale Austin v. State*, No. 33 (Tenn. Crim. App., Jackson, Apr. 17, 1985) (first petition for post conviction relief and first petition for writ of error *coram nobis* – consolidated), *perm. app. denied* (Tenn. 1985). The petitioner then filed a petition seeking a federal writ of habeas corpus and moved for summary judgment. The federal district court partially granted relief on the issue of ineffective assistance of counsel and jury instruction grounds. *See Austin v. Bell*, 938 F. Supp. 1308 (M.D. Tenn. 1996) (first federal writ of habeas corpus and motion for summary judgment – consolidated); *see also Austin v. Bell*, 927 F. Supp. 1058 (M.D. Tenn. 1996) (amended federal writ of habeas corpus) (denying relief on subsequent issues raised by petitioner in an amended habeas corpus petition). The State appealed the district court's ruling that trial counsel was ineffective and that the reasonable doubt instruction was unconstitutional. The Sixth Circuit Court of Appeals reversed the district court on all grounds relating to the guilt phase of the petitioner's trial, but it affirmed the finding that trial counsel was ineffective at the sentencing phase. *See Austin v. Bell*, 126 F.3d 843 (6th Cir. 1997), *cert. denied*, 523 U.S. 1079, 118 S. Ct. 1526 and 523 U.S. 1088, 118 S. Ct. 1547 (1998). The court remanded the case to the Shelby County Criminal Court for a new sentencing trial. On March 5, 1999, a Shelby County jury sentenced the petitioner to death. The petitioner appealed, and this court affirmed the death sentence on March 6, 2001. *See State v. Richard Hale Austin*, No. W1999-00281-CCA-R3-DD (Tenn. Crim. App., Jackson, Mar. 6, 2001), *aff'd*, 87 S.W.3d 447 (Tenn. 2002), *cert. denied*, 538 U.S. 1001, 123 S. Ct. 1899 (2003).

In October 2004, the petitioner filed his Petition for Writ of Error *Coram Nobis*. The petition alleged that on September 14, 2004, one of the petitioner's attorneys, who represented him at the re-sentencing trial, received a telephone call from Mr. Blankenship's wife. Ms. Blankenship informed counsel that her husband, who is incarcerated in East Tennessee, instructed her to tell counsel that he lied during the petitioner's re-sentencing hearing because his lawyer informed him that if he implicated the petitioner in the Watkins' murder, he could possibly receive early release from prison. Counsel's affidavit, attached to the *coram nobis* petition, stated that Mr. Blankenship "had for 20 years consistently denied that [the petitioner] had hired him to commit the murder." It further stated that Mr. Blankenship, previous to the re-sentencing hearing testimony, "provided two sworn statements[] and a federal deposition to that effect."[1] At the re-sentencing hearing, however, Mr. Blankenship testified that the petitioner was involved in the Watkins' murder.

After receiving the telephone call, the petitioner's counsel sent Private Investigator Glori Shettles to interview Mr. Blankenship at Northwest Correctional Complex. Mr. Blankenship confirmed the information in his wife's telephone call to the petitioner's counsel. Ms. Shettles' affidavit, attached to the *coram nobis* petition, stated that Mr. Blankenship informed her that he lied at the petitioner's re-sentencing hearing. His counsel allegedly informed him that he would receive assistance from the State in his early release efforts if he testified falsely, implicating the petitioner in the Watkins' murder. Therefore, he changed his story of approximately 20 years. Mr. Blankenship told Ms. Shettles that he is unaware of his counsel's motives for advising him to provide false testimony. He further informed her that he has received "no special consideration since providing [the] testimony."

In its response to the petition, the State argued, in essence, that this testimony was not newly discovered evidence and that the petitioner filed the petition outside the one-year statute of limitations period.

The *coram nobis* court, without holding an evidentiary hearing, issued a written order denying the petition on November 8, 2005. The court ruled that even taking the petitioner's allegations as true, he was not entitled to relief under section 40-26-105. *See* T.C.A. § 40-26-105 (2003). The court found that Mr. Blankenship's re-sentencing hearing testimony was corroborated by Terry Casteel's testimony, that nothing indicated that Mr. Blankenship's re-sentencing testimony was false other than his recantation, and that "[t]here is absolutely nothing in the record to suggest the present testimony of [Mr.] Blankenship is true as opposed to the [re-sentencing] testimony." The court also held, implicitly, if not expressly, that no different result would have been achieved had Mr. Blankenship testified differently in the re-sentencing hearing. Thus, the court held that Mr. Blankenship's recanted testimony "does not constitute newly discovered evidence which would entitle the petitioner to relief."

---

[1]Mr. Blankenship had not testified in the proceedings against the petitioner until he testified in the re-sentencing hearing. Prior to the petitioner's 1977 trial, the petitioner's counsel obtained a statement from Mr. Blankenship wherein Mr. Blankenship denied that the petitioner had hired him to kill the victim.

The petitioner now appeals the lower court's denial of his petition. Initially, he asserted one basis for error, arguing that Tennessee Code Annotated section 40-26-105 mandates the *coram nobis* court to conduct an evidentiary hearing. *See* T.C.A. § 40-26-105. The State responded by asserting that the statute does not mandate a hearing and that the petitioner filed the petition outside the one-year statute of limitations. In his reply brief, the petitioner points out that the *coram nobis* court did not rule on the statute of limitations issue. The petitioner further asserts that if this court decides this issue, despite the lower court's failure to do so, then he is entitled to a hearing to establish that his due process rights preclude the application of the statute of limitations.

A writ of error *coram nobis* is an extraordinary remedy by which a trial court may provide relief from a judgment under narrow and limited circumstances. *State v. Mixon*, 983 S.W.2d 661, 668 (Tenn. 1999). The remedy is available by statute to a criminal defendant in Tennessee. *See* T.C.A. § 40-26-105. This statute provides, in pertinent part:

> Upon a showing by the defendant that the defendant was without fault in failing to present certain evidence at the proper time, a writ of error [*coram nobis*] will lie for subsequently or newly discovered evidence relating to matters which were litigated at the trial if the judge determines that such evidence may have resulted in a different judgment, had it been presented at the trial. The issue shall be tried by the court without the intervention of a jury, and if the decision be in favor of the petitioner, the judgment complained of shall be set aside and the defendant shall be granted a new trial in that cause.

*Id*.

Recanted testimony may qualify as newly discovered evidence. *Mixon*, 983 S.W.2d at 672. A new trial should be granted on the basis of newly discovered recanted testimony, however, only if: (1) the trial court is reasonably well satisfied that the testimony given by the material witness was false and the new testimony is true; (2) the petitioner was reasonably diligent in discovering the new evidence, or was surprised by the false testimony, or was unable to know of the falsity of the testimony until after the trial; and (3) the jury might have reached a different conclusion had the truth been told. *Id*. at 673 n.17. The court may grant a petition for writ of error *coram nobis* if it determines that if the newly discovered evidence had been introduced at trial, "there is a 'reasonable probability' that the result of the proceeding would have been different." *State v. Workman*, 111 S.W.3d 10, 17-18 (Tenn. Crim. App. 2002). The decision to grant or deny the petition lies within the sound discretion of the trial court. *See* T.C.A. § 40-26-105; *State v. Hart*, 911 S.W.2d 371, 375 (Tenn. Crim. App. 1995). Therefore, we will not overturn the decision of the trial court absent a showing of abuse of discretion.

We hold that the *coram nobis* court did not abuse its discretion when summarily denying the petition without an evidentiary hearing because the first and third prong of the *Mixon*

factors for determining the viability of a *coram nobis* petition had not been met. *See Mixon*, 983 S.W.2d at 673 n.17.

First, we review the *Mixon* requirement the trial judge must be reasonably assured that the recanted testimony was false and that the new statement is true. We acknowledge that, once a *coram nobis* petitioner alleges in his petition that the trial testimony was false and that the new statement is true and buttresses his petition with the witness' affidavit, a hearing may well be necessary to determine the issue because, without a hearing, the petitioner would have no opportunity to present the live testimony of the recanting witness so that the *coram nobis* court could fathom his or her credibility. Not even an affidavit of the recanting witness attached to the petition can convey the permutations of credibility, such as demeanor, that live testimony conveys. Thus, when a petition makes such a claim of a witness' recantation, which, if true, could result in *coram nobis* relief, the petitioner may well be entitled to an opportunity to prove his allegations.

That said, we nevertheless discern no abuse of discretion in using *Mixon*'s first factor as a basis for dismissing the petition. Initially, we note that the petitioner did not bolster his petition with any sworn statement of Mr. Blankenship; he merely alleged via a sworn statement from third parties that Mr. Blankenship, without the imprimatur of an oath, had disclaimed his sworn re-sentencing hearing testimony. *See Hart*, 911 S.W.2d at 375 (stating that an affidavit "must be relevant, material and germane to the grounds raised in the [*coram nobis*] petition; and the affiant must have personal knowledge of the statements contained in the affidavit"). Moreover, as the *coram nobis* court pointed out, the record is devoid of any claim of corroboration that Mr. Blankenship's recantation is truthful and that his re-sentencing hearing testimony was false. To the contrary, co-defendant Terry Casteel's re-sentencing hearing testimony, according to the *coram nobis* court, corroborated "almost every detail" of Mr. Blankenship's re-sentencing hearing testimony. Finally, we agree with the *coram nobis* court's view that because Mr. Blankenship recanted sworn testimony not once but twice,[2] his appearance at a *coram nobis* hearing could not alone establish the truth of the most recent recantation.

Second, we hold that the lower court acted within its discretion in dismissing the petition on the alternate ground that different testimony by Mr. Blankenship would not have affected the imposition of the death sentence. The court opined that "[e]ven tak[ing] all allegations . . . as true, . . . the petitioner is not entitled to relief . . . ." The court pointed to Mr. Casteel's testimony which corroborated Mr. Blankenship's testimony. Also, the petitioner vigorously impeached Mr. Blankenship, his own witness, via a sworn deposition rendered in a federal habeas corpus action, in which deposition Mr. Blankenship had denied the petitioner's involvement in the victim's murder. The re-sentencing jury fully heard about Mr. Blankenship's prior sworn claim that the petitioner was not involved. We believe the impeachment rendered Mr. Blankenship's testimony ineffectual, that the jury would have found Mr. Casteel's testimony more appealing, and moreover that the result would not have changed had Mr. Blankenship testified differently. *See Pervis Tyrone Payne v. State*,

---

[2] Mr. Blankenship gave the first sworn testimony in a federal court deposition, which he recanted in the petitioner's re-sentencing hearing.

No. 02C01-9703-CR-00131, slip op. at 34 (Tenn. Crim. App., Jackson, Jan. 15, 1998) (holding that petitioner suffered no prejudice by being denied a *coram nobis* hearing because "[t]here is no question as to the confidence in the jury's verdict").

Furthermore, the *coram nobis* court correctly denied the petition without holding an evidentiary hearing. Similar to habeas corpus hearings, *coram nobis* evidentiary hearings are not mandated by statute in every case as the petitioner argues. Specifically, a "habeas corpus petition may be dismissed without a hearing, and without the appointment of counsel for a hearing" if the petition does not allege facts showing that the petitioner is entitled to relief. *State ex rel. Edmondson v. Henderson*, 220 Tenn. 605, 609, 421 S.W.2d 635, 636 (Tenn. 1967) (citing *State ex rel. Byrd v. Bomar*, 214 Tenn. 476, 381 S.W.2d 280 (Tenn. 1964)). Likewise, a *coram nobis* petition must state a claim for *coram nobis* relief and satisfy the threshold statutory requirements before the court holds an evidentiary hearing to determine whether the petitioner is entitled to *coram nobis* relief. In *Harris v. State*, 102 S.W.3d 587 (Tenn. 2003), the Tennessee Supreme Court stated, "Unlike motions to reopen, [*coram nobis*] claims are not easily resolved on the face of the petition and *often* require a hearing." *Id*. at 593 (emphasis added). This language reveals that some petitions may be dismissed without a hearing. Moreover, remanding a case which failed facially to meet statutory requirements for an evidentiary hearing would be an exercise in futility, and the interests of judicial economy and efficiency are better served by disposing of the case prior to a hearing. *See Pervis Tyrone Payne*, slip op. at 34; *cf. Danny Ray Meeks v. State*, No. M2005-00624-CCA-R3-HC, slip op. at 4 (Tenn. Crim. App., Nashville, Dec. 1, 2005) (holding that petitioner is not entitled to a habeas corpus evidentiary hearing when the petitioner failed to state a cognizable claim for habeas corpus relief).

Last, because the petitioner's *coram nobis* petition fails with respect to the newly discovered evidence statutory requirement, we decline to reach the statute of limitations issue.

Based on the foregoing analysis, the judgment of the lower court is affirmed.

_____
JAMES CURWOOD WITT, JR., JUDGE