**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 07a0353n.06
Filed: May 24, 2007

**No. 05-5829**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| **KEITH ALLEN**, | ) | |
| | ) | ON APPEAL FROM THE |
| *Petitioner-Appellant*, | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE WESTERN |
| v. | ) | DISTRICT OF TENNESSEE |
| | ) | |
| **HOWARD CARLTON**, | ) | **O P I N I O N** |
| | ) | |
| *Respondent-Appellee.* | ) | |

**BEFORE:** KEITH and COLE, Circuit Judges; OLIVER, District Judge.[*]

**R. GUY COLE, JR., Circuit Judge**. A Tennessee jury convicted and sentenced Petitioner-Appellant Keith J. Allen to life imprisonment for killing Anthony Mason while perpetrating a robbery. After exhausting his state-court remedies, Allen filed a habeas petition under 28 U.S.C. § 2254 in the district court, raising eight separate grounds for relief. The district court reviewed and denied all of Allen's claims. On appeal, Allen argues that his Fourteenth Amendment due-process rights were violated by the trial court's erroneous jury instruction. The district court concluded that the court's jury instruction was not erroneous under Tennessee law or the Fourteenth Amendment and, even if it were, the error was harmless. For the reasons that follow, we **AFFIRM** the district court's grant of summary judgment.

---

[*] The Honorable Solomon Oliver, Jr., United States District Judge for the Northern District of Ohio, sitting by designation.

**I.**

**A. Factual Background**

On August 23, 1992, the Memphis Police Department responded to a call that shots were fired in Allen's neighborhood. *State v. Allen*, No. 02-C-01-9307-CR00166, 1994 WL 456345, at *1 (Tenn. Crim. App. Aug. 24, 1994). Although no shots were fired, a neighborhood resident told police that there was a dead body inside Allen's house. In Allen's living room, officers discovered the corpse of Anthony Mason. Officers also discovered the murder weapon—a two-foot-long machete with a four-inch blade.

Allen admitted to killing Mason in self-defense. A medical exam revealed that Allen struck Mason with the machete twenty-eight times. Ten of the twenty-eight cuts would individually have killed Mason—two of them instantly. Mason's hands were almost severed, the back of his neck was hit six times, and two of the twenty-eight cuts were to Mason's head. Mason was only fifteen years old at the time of his death.

Allen testified that there was a party at his house that ended just prior to Mason's death. According to Allen, he ran out of crack during the party and offered to buy more from Mason, who was also at the party. Mason agreed to sell Allen one rock of crack for twenty dollars. After Allen had smoked half of the rock of crack, Mason raised the price to thirty dollars. Allen testified that he refused to pay the extra ten dollars. He then removed the machete from under the sofa and placed it on the table next to Mason. Allen asked Mason to leave the house and Mason refused. According to Allen he was "out of it," and the two men fought. Allen testified that he was in "immediate fear for [his] life" because Mason had the machete. (Joint Appendix ("JA") 147.)

Allen attributed Mason's violent death to Allen's drinking and crack use. Allen admitted to drinking and smoking crack beginning around noon the day before the murder and ending just before Mason's death. Allen testified that Mason was at the party to sell crack.

## B.  Procedural History

The State charged Allen with felony murder, with robbery as the predicate felony. At Allen's trial, the jury was instructed on the elements of felony murder and the elements of robbery. During its deliberations, the jury asked the judge, "Robbery, do all elements have to be proved [sic] or just one element to be guilty of robbery?" (*Id.* 390.) At first, the judge stated, in a conference with the attorneys, that "[a]ll elements of robbery have to be proven." (*Id.* 391.) Ultimately, however, the court answered the jury's question with a "no" (without any explanation) despite the jury's compound question. (*Id.* 402.)

On May 27, 1993, a Tennessee jury convicted Allen of first-degree murder and sentenced him to life imprisonment. The Tennessee Court of Criminal Appeals affirmed Allen's conviction and sentence on August 24, 1994. *Allen*, 1994 WL 456345, at *2. On appeal, Allen challenged the evidence supporting his conviction, claiming it was insufficient for a rational trier of fact to find guilt beyond a reasonable doubt. The Tennessee Court of Criminal Appeals disagreed, concluding instead that there was sufficient evidence for the jury to conclude that Allen killed Mason while perpetrating a robbery. The court determined that a jury could have reasonably concluded that Allen ran out of crack and murdered Mason to get more. *Id.* at *1-2.

Allen also argued that the trial court erred when it answered the jury's question. The court disagreed, noting that "[w]hile the trial court should have expanded upon the response given to the

jury, the answer was accurate." *Id.* at *2. Alternatively, the court concluded that any error, if there was one, was harmless because there was overwhelming evidence of Allen's guilt. *Id.*

The Tennessee Supreme Court denied Allen's petition to appeal, and Allen filed a petition for post-conviction relief in the state trial court, which was ultimately denied by the trial court and affirmed by the Tennessee Court of Criminal Appeals. *Allen v. State*, No. W1999-01522-CCA-R3-PC, 2001 WL 55638 (Tenn. Crim. App. Jan. 23, 2001).

Allen filed a petition for a writ of habeas corpus under 28 U.S.C. § 2254. The district court granted summary judgment for the Warden, holding that the trial court's response to the jury's question did not violate Allen's due-process rights. *Allen v. Carlton*, No. 01-2966, slip op. at 11 (W.D. Tenn. Feb. 28, 2005). Specifically, the district court concluded that "[a] close reading of the supplemental instruction indicates that, while it was perhaps not helpful to the jury, it did not alter the jury's obligation to find that the victim was killed in the perpetration, or attempt to perpetrate, a robbery, and that Allen intended to commit the robbery." *Id.* at 7. The district court also concluded that any error (if there was one) was harmless because there was sufficient evidence from which a jury could conclude that Allen killed Mason while perpetrating a robbery. *Id.* at 10-11.

Allen timely appealed. We have jurisdiction over this appeal under 28 U.S.C. § 2253 and 28 U.S.C. § 1291 because the district court issued a final order in a habeas-corpus proceeding.

**II.**

**A. Standard of Review**

Because Allen filed his habeas petition in 2001, Allen's petition is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). *Carter v. Mitchell*, 443 F.3d

517, 524 (6th Cir. 2006). Under AEDPA, Allen is entitled to habeas relief if the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court" or was "based on an unreasonable determination of the facts in light of the evidence presented." 28 U.S.C. § 2254(d). A state court's decision is contrary to clearly established law when the state court "applies a rule that contradicts the governing law set forth in [Supreme Court] cases, or if it confronts a set of facts that is materially indistinguishable from a decision of th[e] [Supreme] Court but reaches a different result." *Brown v. Payton*, 544 U.S. 133, 141 (2005). Further, a state court unreasonably applies clearly established federal law when "the state court applies th[e] [Supreme] Court's precedents to the facts in an objectively unreasonable manner." *Id.* In evaluating Allen's petition for a writ of habeas corpus, the district court's factual findings are reviewed for clear error and its legal conclusions are reviewed de novo. *Harrison v. Motley*, 478 F.3d 750, 754 (6th Cir. 2007).

To succeed on habeas review, Allen must show two things: First, Allen must establish that the Tennessee Court of Criminal Appeals' decision, holding that the trial court's response to the jury's question was not a violation of Allen's due-process rights, was an unreasonable application of *Estelle v. McGuire*, 502 U.S. 62 (1991), and *In re Winship*, 397 U.S. 358 (1970); and second, Allen must demonstrate that the state court's error was not harmless. Allen's habeas petition fails, because even assuming that the state court's instruction was erroneous, the error was harmless and therefore does not entitle Allen to relief.

**B. Harmless Error**

Federal habeas relief "does not lie for errors of state law." *Estelle*, 502 U.S. at 67 (quoting

*Lewis v. Jeffers*, 497 U.S. 764, 780 (1990)) (internal quotation marks omitted). To warrant habeas relief, the error must rise to the level of a constitutional violation: "[A] federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Id.* at 68. A defendant's due-process rights are violated when a jury convicts the defendant without finding each element of the offense beyond a reasonable doubt. *In re Winship*, 397 U.S. at 364 ("[T]he Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged."). "If an instruction is ambiguous and not necessarily erroneous, it violates the Constitution only if there is a reasonable likelihood that the jury has applied the instruction improperly." *Austin v. Bell*, 126 F.3d 843, 846 (6th Cir. 1997).

In *Arizona v. Fulminante*, 499 U.S. 279, 306 (1991), the Supreme Court explained that "most constitutional errors can be harmless." In *Neder v. United States*, 527 U.S. 1, 9 (1999), the Court explained that a jury instruction "that omits an element of the offense does not *necessarily* render a criminal trial fundamentally unfair or an unreliable vehicle for determining guilt or innocence." *Id.*; *Johnson v. United States*, 520 U.S. 461, 469 (1997) (explaining that "improperly instructing the jury on an element of the offense . . . is subject to harmless-error analysis") (internal citations omitted); *see also Austin*, 126 F.3d at 846 ("To warrant habeas relief, jury instructions must not only have been erroneous, but also, taken as a whole, so infirm that they rendered the entire trial fundamentally unfair."). Thus, if there is overwhelming evidence to support Allen's conviction, any error by the trial court in instructing the jury would be harmless. *See, e.g.*, *Johnson*, 520 U.S. at 470 (concluding that because there was overwhelming evidence of an element of the offense, failure to

submit that element to the jury was harmless error).

In *Johnson*, for instance, the Court concluded that, where the judge erroneously decided the materiality element of a perjury offense[1] rather than submitting it to the jury, the error was harmless because of the "overwhelming" and "uncontroverted" evidence supporting materiality. 520 U.S. at 470. Based on this evidence, the Court explained that "there is no basis for concluding that the error 'seriously affect[ed] the fairness, integrity or public reputation of judicial proceedings.'" *Id.*

Here, any error by the state court was harmless because there was overwhelming evidence from which a jury could conclude that Allen killed Mason while perpetrating a robbery. The Tennessee trial court instructed the jury on the elements of robbery:

> For you to find the defendant guilty of [robbery], the state must have proven beyond a reasonable doubt the existence of the following essential element[s]:
>
> 1. that the defendant knowingly obtained or exercised control over property owned by <u>Anthony Mason</u>, and;
> 2. that the defendant did not have the owner's effective consent;
> 3. that the defendant intended to deprive the owner of the property; and
> 4. that the defendant took such property by the use of violence or by putting the alleged victim in fear;
> 5. that the defendant took such property intentionally or knowingly.

*Allen*, slip op. at 3 (first alteration in original). Allen testified that he took the crack from Mason's pocket after Mason's death and smoked it, establishing that Allen exercised control over Mason's property. (JA 149.) Allen also testified that Mason expected him to pay $30 for the crack; this

---

[1] In *Johnson*, the court explained that the materiality element in a perjury prosecution should be submitted to the jury rather than decided by the judge. 520 U.S. at 465. Materiality is an element of perjury under 18 U.S.C. § 1623, which makes it unlawful to "'knowingly mak[e] any false material declaration' under oath before a grand jury." *Id.* (quoting § 1623).

implies that Allen, by taking the crack without paying for it, took it without Mason's consent. (*Id.* 145-46.) Further, Allen's testimony regarding his crack use helped establish that he was addicted to crack and therefore stealing it was within the realm of possibility. Specifically, Allen testified that he had spent the hours preceding the murder smoking crack and drinking alcohol, (*id.* 138-45), and his house was the site of a crack party before the murder. (*Id.* 139-40.) Allen also testified that he knew Mason had at least four rocks of crack in his pocket, (*id.* 144), and that, by the morning of the murder, he had run out of money to buy more crack. (*Id.* 168.) Additionally, given Mason's violent death, a jury could reasonably conclude that Allen attempted to take the crack by force as required to be convicted of robbery.

In Tennessee, "intent to commit the underlying felony must exist prior to or concurrent with the commission of the act causing the death of the victim." *State v. Buggs*, 995 S.W.2d 102, 107 (Tenn. 1999). In *Buggs*, the court explained that "a jury may reasonably infer from a defendant's actions immediately after a killing that the defendant had the intent to commit the felony prior to, or concurrent with, the killing." *Id.* at 108. Here, the intent required for felony murder is the same as that required for robbery because the mental state or intent required to convict an individual of felony murder is supplied by the predicate offense. *State v. Rice*, 184 S.W.3d 646, 684 (Tenn. 2006) ("There is no culpable mental state required for felony murder, other than the intent to commit the underlying felony."). Thus, because the third element of the felony-murder charge instructed the jury that it must find beyond a reasonable doubt that Allen "intended to commit the alleged <u>Robbery</u>," the jury must have found that Allen had the mens rea required for robbery if it convicted him of felony murder. *Allen*, slip op. at 3.

Alternatively, even if we conclude that the jury did not make a finding on the mens rea element in convicting Allen of felony murder, there is still overwhelming evidence from which a jury could conclude that Allen had the requisite mens rea. Although Allen took the crack after Mason's death, there is evidence from which the jury could have inferred that Allen attacked Mason with the intent of stealing the crack. Allen knew Mason had at least four rocks of crack on him, and the evidence adduced at trial indicated that Allen was a crack addict. Moreover, the district court noted that Allen admitted to telling Mason that "if [he] was gonna rob [Mason,] wasn't nothing [Mason] could do about it." *Allen*, slip op. at 10. Further, it is unlikely that a jury would have believed Allen's self-defense argument, given that Mason was stabbed twenty-eight times. *Allen*, 1994 WL 456345, at *1. Ten of those stab wounds were so severe that each independently would have killed him, and two of the twenty-eight stab wounds would have resulted in instantaneous death. *Id.* The jury could have reasonably concluded that a person acting in self-defense would have stopped stabbing Mason as soon as Mason was incapacitated. Thus, there was overwhelming evidence from which the jury could have concluded that Allen, who was high on crack, drunk, and fresh out of crack, intended to rob Mason when he attacked and killed him. Accordingly, any error by the trial court was harmless.

### III.

We do not address whether the jury instruction by the Tennessee trial court was erroneous. Rather, we decide only the narrow question of whether, assuming an erroneous jury instruction, that error warrants habeas relief. In sum, because we conclude that any error by the trial court was harmless, the district court's dismissal of Allen's habeas petition is **AFFIRMED**.